IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Robin Gamble *et al.* | : | |
| | : | Case No. 1:03-cv-452 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART |
| Ohio Department of Job and Family | : | AND DENYING IN PART |
| Services *et al.* | : | SUMMARY JUDGMENT AND |
| | : | DISSOLVING CERTAIN |
| Defendants. | : | INJUNCTIVE RELIEF |

This matter comes before the Court on the Motions for Summary Judgment of Barbara

Riley, current Director of the Ohio Department of Job and Family Services ("ODJFS") (doc.

#63), and Tom Hayes, past ODJFS Director (doc. #36).[1]  For the reasons below, Hayes' motion

is **DENIED**, and Riley's Motion is **GRANTED**.  In light of its ruling on Riley's motion, the

Court also **DISSOLVES** its September 28, 2004 injunction (doc. #46) insofar as it awards relief

against the ODJFS Director.

**I.  BACKGROUND[2]**

Plaintiffs, five Ohio parents who received public assistance at some point in time,

brought this 42 U.S.C. § 1983 action against ODJFS, the Hamilton County Department of Job

---

[1] The Court may consider both motions in this case.  See note 3, <u>infra</u>.

[2] This covers only the facts most relevant to the immediate motions.  For a more
comprehensive factual and procedural history, see the Court's pending Order Granting in Part
and Denying in Part Motion for Summary Judgment of Hamilton County Department of Jobs and
Family Services and Suzanne Burke (docket # pending) and doc. ##s 46 and 34.

and Family Services (HCDJFS), and the agencies' respective Directors. Plaintiffs allege that Defendants violated their federal statutory and procedural due process rights by wrongly over-withholding child support collections Plaintiffs had temporarily assigned to the State of Ohio as a condition of receiving public assistance. More specifically, Plaintiffs challenge Defendants' application of certain provisions of Title IV-D of the Social Security Act, 42 U.S.C. §§ 651 *et seq.*, known as the Family First provisions, that govern the distribution of these collections.

The Family First rules require any child support collected while a recipient's family is on public assistance to be transmitted to the State of Ohio and then either passed onto the federal government or retained by the State to help offset the costs of furnishing public assistance to the family. See 42 U.S.C. § 657(a)(1)(A) and (B); see also 42 U.S.C. § 608(a)(3)(A) (conditioning receipt of public assistance on assignment of payments). Of particular note to this case, the rules further provide that the total child support ultimately transmitted to the State and retained by the State and/or federal government should not exceed the total public assistance the State has paid to the recipient's family. See 42 U.S.C. §§ 657(a)(1), (a)(2)(A), and (a)(2)(B). While this is a theoretically simple principle, the rules governing the actual assignment and redistribution of child support collections in individual public assistance cases are complex. See generally 42 U.S.C. §§ 657(a)(2)(B).

The Family First rules are administered by both ODJFS, the state agency that oversees Ohio's child support enforcement program, and by a network of county-level departments of job and family services or child support enforcement agencies. See Ohio Revenue Code ("O.R.C.") §§ 329.01, 3125.11, 3125.24. HCDJFS is the entity charged with collecting and transmitting to ODJFS all child support collections within Hamilton County. (Id.; see also doc. #46 at 3.) In 2000, pursuant to federal regulatory requirements, ODJFS began implementing a new statewide

child support collection and distribution computer system known as the Support Enforcement

Tracking System ("SETS"). (Doc. #1 at 6 ¶ 12; doc. 14 at 2 ¶ 12; doc. #46 at 2; 45 C.F.R. §

307.5(a)). As discussed below, Ohio's SETS system was federally certified on January 21, 2004.

(Doc. #36.)

Plaintiffs sued ODJFS, HDJFS and the ODJFS and HCDJFS Directors in June 2003.

(Doc. #1.) Their complaint seeks reimbursement of past child support payments or arrearages

they claim Defendants have over-withheld; a declaration that Defendants' alleged over-

withholding violated and continues to violate the United States Constitution and federal laws;

and injunctive relief ordering injunctive relief ordering Defendants to assist Plaintiffs with child

support account audits. (Id. at 10, 13.) It also asks this Court to certify statewide plaintiff and

defendant classes so that other, allegedly similarly-situated public assistance recipients in

Hamilton and other Ohio counties may seek similar relief from ODJFS and their respective

county-level agencies. (Id. at 8 ¶ 18; 9 ¶ 26, and 12.) Plaintiffs' class certification motions

(docs. ##s 10-11) are pending before this Court.

In June 2004, this Court dismissed all Plaintiffs' claims against ODJFS, a state agency, as

barred by state sovereign immunity. (See Doc. # 34). However, the Court held that under the

exception established in Ex parte Young, 209 U.S. 123 (1908), Plaintiffs could continue to seek

declaratory and injunctive relief from ODJFS' Director, then Tom Hayes. (Id.) On September

28, 2004, the Court entered a preliminary injunction barring ODJFS Director Hayes and

HCDJFS Director Suzanne Burke from "recouping erroneous overpayments from Plaintiffs'

subsequent child support payments without Plaintiffs' explicit consent or, barring that, without a

court procedure awarding the overpayment to Defendants." (Doc. #46 at 11.) On October 14,

2005, the Court entered a second injunction requiring ODJFS' Director to "provide electronic

3

access to all information necessary to perform an accurate and complete historical distribution audit for each Plaintiff."  (Doc. #74.)  Both injunctions remain in effect.

In June 2004, Hayes moved for summary judgment on all Plaintiffs' claims.  (Doc. #36.)  In December 2004, while Hayes' motion was still pending before this Court, Hayes was replaced as ODJFS Director by Barbara Riley.  (See Doc. #63 at 1 n. 1.)  In January 2005, Riley filed her own summary judgment motion, essentially restating Hayes' legal arguments but also apprising the Court of regulatory amendments ODJFS undertook after Hayes' filing that Riley contends also operate to bar Plaintiffs' suit.  (Id.)  The Court considers both motions.[3]

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343.  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the moving party has the burden of showing that there exists no genuine issue of material fact, and the evidence–together with all inferences that can permissibly be drawn from that evidence–must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

_____

[3]  Because Plaintiffs sued Hayes in his capacity as ODJFS Director, Riley may be automatically substituted on the pleadings.  See Fed. R. Civ. Proc. 25(d).  This does not conclusively resolve the question of whether the Court may properly consider both Hayes' and Riley's motions.  The Court concludes that it is not improper to consider both motions in this case.  Riley's brief in support of summary judgment raises the same legal claims as the original Hayes brief, and Plaintiffs were permitted to file responses to both briefs.  Also, Riley's brief includes supplemental facts on alleged ODJFS policy changes that are potentially relevant to the disposition of both motions.  See, e.g., Advisory Committee Notes to Rule 25(d) (recognizing right of a successor who "does not intend to pursue the policy of [her] predecessor" to "seek to have the action dismissed as moot" after her 25(d) substitution).

The other remaining defendants, HCDJFS and HCDJFS Director Burke, have also moved for summary judgment.  (Doc. #25.)  Their motion is addressed in a separate Order.

4

The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.  While the initial burden on summary judgment rests with the moving party, Plaintiffs cannot defeat a properly supported defense motion with conclusory assertions or allegations. Harris v. Adams, 873 F.2d 929, 931 (6th Cir. 1989); McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990) (internal citations omitted).  Rather, Plaintiffs must present "some significant, probative evidence" on disputed issues in order to preserve those issues for trial. Harris, 873 F.2d at 931.

## III.    ANALYSIS

Director Riley and past Director Hayes, relying on recent ODJFS administrative changes described below, assert that ODJFS' Director is no longer in a position to commit the sorts of child support calculation and distribution errors Plaintiffs allege in this case.  They conclude that any prospective relief Plaintiffs might otherwise have against the Director is therefore barred as a matter of state sovereign immunity or, in the alternative, the general doctrine of mootness.

For the reasons below, the Court concludes that Riley and Hayes' arguments are best characterized as mootness claims.  The Court finds that the specific prospective relief described in this Court's September 28, 2004 injunction against ODJFS' Director is now moot, and **GRANTS** Riley's motion on this limited basis.  With respect to Plaintiffs' remaining claims for prospective relief against ODJFS' Director, the Court concludes that Riley and Hayes have not established mootness.  Hayes' motion is therefore **DENIED**.

### A.    Administrative Developments at ODJFS

Riley and Hayes point to two major developments since the filing of Plaintiffs' complaint

5

that they contend necessarily bring ODJFS into full compliance with the Family First

provisions.[4]

Hayes notes that on January 21, 2004, the U.S. Department of Health and Human

Services certified ODJFS' SETS as "meeting all federal certification requirements," including

"distribution requirements."  (Doc. #36 at 1.)  This certification, conducted by the Department of

Health and Human Services' Office of Child Support Enforcement ("OSCE"), involved a

"detailed examination of [SETS'] functionality with respect to established criteria" across eight

functional areas, including "case management," "financial management," and "reporting."  (Id.;

see also doc. #36-2 at 8 (preface to "PRWORA[5] certification review report.")).  Hayes

emphasizes that the federal review included a "detailed evaluation of the SET distribution

module through the use of ACF's PRWORA certification test deck[6]."  (Doc. #36 at 2; see also

docs. ##s 36-2 at 8, 36-3 at 1)

Riley notes that on January 4, 2005[7], ODJFS amended one of its existing administrative

---

[4] Riley and Hayes submit, by way of authenticating affidavits, a letter and report issued by an agency of the federal Department of Health and Human Services (docs. ##s 36-3 through 36-6) and the texts of then-current Ohio Administrative Code provisions with proposed changes indicated in strikethrough format.  The report is admissible under the hearsay exception for public records, and the court may take judicial notice of the rule texts and associated changes even to the extent these are not presently codified.  See Federal R. Evid. §§ 803(8) (public records), 201 (judicial notice); see also Toth v Grand Truck R.R., 306 F.3d 335, 349 (6th Cir. 2002) and Citizens of a Better Env't v. Union Oil, 861 F. Supp. 889, 896-97 (N.D. Cal. 1994) (judicial notice of administrative regulations).

[5] PRWORA denotes the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law 104-193, which established requirements for "automated child support enforcement systems."  (Ex. A at 7.)

[6] The attached federal reports refer to a "deck"; Hayes' brief refers to a "disk."

[7] Riley's brief actually reads "January 4, 2004."  (Doc. #63 at 2.)  This is almost certainly a typographical error, as ODJFS could not respond to a September 2004 order in January 2004.

regulations, then codified at O.A.C. § 5101:1-31-12, "on an emergency basis to comply with [this Court's] preliminary injunction of September 28, 2004." (Doc. #63 at 2.) In her opening brief, filed January 10, 2005, Riley anticipated that within 90 days, ODJFS would adopt a new regulation–to be codified at O.A.C. § 5101:12-80-05.6–as a "permanent rule to implement the provisions of the September 28, 2004" injunction. (Id.) This new "permanent" rule, which reproduces the text ODJFS added to O.A.C. § 5101:1-31-12 on an emergency basis in January 2005, has been in effect since April 4, 2005. See O.A.C. §§ 5101:12-80-05.6 and annotations; cf. doc. #63-2 at 18-19 (amendment text). The remainder of the emergency amended rule has since been re-codified[8] in the administrative code at surrounding subsections 5101:12-80-05 through 5101:12-80-05.7. See id. and annotations to former O.A.C. § 5101:1-31-12 (repealed).

Plaintiffs do not dispute the specific facts set forth in Riley and Hayes' papers. (See generally docs. ##s 41, 64.) Rather, they contend that these factual showings–as a matter of law–simply do not compel dismissal of their prospective relief claims against the ODJFS Director. (Id.) The Court agrees, with one important exception discussed at Part III.C below.

### B. Sovereign Immunity

Riley and Hayes (collectively "Defendants") characterize their motions as interposed under the Eleventh Amendment state sovereign immunity doctrine. As noted above, this Court has already applied the doctrine to dismiss all Plaintiffs' claims against ODJFS and limit Plaintiffs' case against ODJFS' Director to claims for prospective declaratory or injunctive relief cognizable under the Ex parte Young exception to sovereign immunity. (See Doc. #34.) Defendants now contend, somewhat counterintuitively, that the very claims the Court has so far

---

[8] It appears that certain portions of the rule have been further amended since January 2005. See discussion at note 17, infra.

7

expressly preserved under Ex parte Young are *also* barred as a matter of sovereign immunity. (See doc. #36 at 1; doc. #63 at 1.)  They assert that "[t]he Eleventh Amendment precludes this Court from issuing prospective injunctive relief if there is no ongoing violation," doc. #36 at 2, and that the SETS certification and rule changes cited above prove that ODJFS is now complying with the Family First rules.  (Doc. #36 at 2-6; doc. #63 at 2-4.)

Plaintiffs respond that Defendants' contention has "nothing to do with the Eleventh Amendment" or state sovereign immunity, and is more properly construed as a mootness argument.  (Doc. #41 at 2; see also doc. #64 at 4.)  Plaintiffs further reason that their claims cannot be dismissed as moot, because Defendants have not made the requisite factual showing that ODJFS is not engaged in any "ongoing violation[s]" of the Family First rules, let alone that there is no "cognizable danger of recurrent violation[s]" by ODJFS.  (Doc. #41 at 2; doc. #64 at 3 (citing U.S. v. W.T. Grant Co., 345 U.S. 629, 633 (1953).)

Plaintiffs' position, while underdeveloped, is essentially correct.  As a threshold matter, the Court agrees that Defendants' sovereign immunity theory does not materially advance their cause.  Riley and Hayes both rely on Green v. Mansour, 474 U.S. 64 (1985) for the proposition that "where there is no ongoing violation," state sovereign immunity bars prospective injunctive relief.  (Doc. #36 at 3; see also doc. #63 at 3 (embedded citation))  In fact, Green carefully distinguishes the issue of "future violation[s]" giving "occasion to issue an injunction" from that of "past [unlawful] actions" that–but for the Eleventh Amendment bar–might support "an award of money damages or restitution."  Green, 474 U.S. at 73.  Defendants do not offer any authority that erodes this essential distinction, and the Court is not aware of any.

The Green Court did find that in the circumstances of the immediate case, a certain *kind* of prospective relief–a judgment declaring that respondents had violated federal law in the

8

past–would "have much the same effect" as a damage award.  Id. (emphasis added).  An important predicate to the Court's conclusion, however, was petitioners' *concession* that certain regulatory amendments had already ended respondents' violations of federal law and mooted petitioners' prospective claims for the "type of injunctive relief approved in Ex parte Young." See id. at 66-67.  The Court speculated that under these circumstances, a declaratory judgment could be valuable to petitioners only as a basis for establishing *res judicata liability* before a state court which might then be inclined to award damages.  Id. at 73.  The Court thus rejected declaratory relief as inconsistent with the dictates of Edelman v. Jordan, 415 U.S. 651 (1974), which extends the sovereign immunity shield to equitable relief that would in effect tap the state treasury.  Green, 474 U.S. at 73; see also Edelman, 415 U.S. at 676.

Green is not this case.  For one thing, the Court has already observed that Plaintiffs appear to state claims for prospective relief that fall under Ex parte Young.  See doc. #34 at 7. The Court has not yet had an opportunity to consider the legal *merits* of those claims, let alone what specific *relief*–declaratory or otherwise[9]–may ultimately be appropriate in this case. Defendants have not shown, nor is there any reason to assume, that this ultimate relief would necessarily implicate the state treasury as in Green.  Most importantly, Plaintiffs–unlike the petitioners in Green–clearly dispute that ODJFS' administrative changes have eliminated all the "ongoing violations" of federal law alleged in their complaint.  (See, e.g., doc. #41 at 3-5; doc. #64 at 1-4.)  Mootness–assumed in Green and its progeny–is the central issue here.

_____

[9] Plaintiffs' complaint includes a claim for a declaration that the ODJFS Director's conduct violates federal law.  See doc. #1 at 13 ¶ 3 (requesting declaration that "Defendants' conduct violated, and continues to violate, the Constitution and laws of the United States.") However, as both the complaint and this Court's pending (and non-declaratory) injunctions make clear, Plaintiffs also seek other forms of prospective relief.  See id. at 12-13 and docs. ##s 46, 74.

9

## C.    Mootness[10]

Mootness is a constitutional doctrine designed to limit the federal courts' jurisdiction to live "cases" and "controversies."  See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000); Kentucky Right to Life v. Terry, 108 F.3d 637, 644 (6th Cir. 1997). While a defendant asserting mootness must typically show that he is not currently violating the law in any manner alleged by plaintiffs, "a defendant's voluntary cessation of a challenged practice does not," in itself, "deprive a federal court of its power to determine the legality of the practice." Laidlaw, 528 U.S. at 189 (citing City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982)).  Rather, "a defendant claiming that its voluntary compliance moots a case" also "bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior *could not reasonably be expected to recur*." Laidlaw, 528 U.S. at 190 (internal citation omitted) (emphasis added).

### 1.    Federal Certification of SETS System

As noted above, former ODJFS Director Hayes' summary judgment motion is predicated on the January 21, 2004 certification of ODJFS' SETS system as "meeting all applicable federal requirements for Title IV-D, 42 U.S.C. § 651 *et seq*."  (Doc. #36 at 2; see also Ex. A at 3.) Hayes does not explain or examine the contents of the federal certification report attached to his brief, other than to emphasize–by reference to the report's executive summary–that the review

---

[10] On reply, Hayes suggests that the mootness issue is not properly before the Court because he "did not raise mootness."  (Doc. #43 at 1.)  This is a curious statement given that the argument portion of Hayes' opening brief concludes "this matter is moot."  (Doc. #36 at 6.) Riley discusses mootness on reply, although her opening brief–like Hayes'–focuses on the Eleventh Amendment.  (See docs. ##s 63, 65.)  In any event, because mootness issues implicate the Court's Article III subject matter jurisdiction, the Court does not need the parties' permission to raise them.  See, e.g., Grupo Dataflux v. Atlas Global Group, 541 U.S. 567, 593 (2004).

included a "detailed evaluation of the SET[S] distribution module through the use of ACF's PRWORA certification test disk."  (Id.; Doc. #36-2 at 8.[11])  With this limited observation, Hayes concludes that "Ohio's SETS program fully meets all federal requirements including the distribution requirements set forth in [the Family First rules of] 42 U.S.C. §657(a)," and that any prospective relief otherwise available to Plaintiffs in this case is thus foreclosed.  (Doc. #36 at 3.)

Hayes' cursory survey of the SETS certification documents does not support a showing that, for mootness purposes, ODJFS has ceased making the calculation errors Plaintiffs allege in this case.  Even assuming *arguendo* that the federal evaluation of the SETS distribution module was designed to uncover the specific types of over-withholding errors at issue in this case–a fact not conclusively established by Hayes–the evaluation involved only twenty-five sample cases. (Doc. #36-3 at 1.)  The federal certification report emphasizes that while these cases were designed to cover a range of issues, including "arrears," "due to the limited nature and number of test deck scenarios, not all possible distribution scenarios could be tested."  (Id. at 1-2.) Therefore, it is impossible to determine, without more contextual evidence, whether the tested scenarios eliminate the possibility that the SETS system will make the sorts of errors alleged by Plaintiffs.

The absence of contextual facts also makes it difficult for the Court to evaluate those aspects of the federal certification report not specifically highlighted by Hayes.  With this caveat, the Court notes that other elements of the report do not appear to bolster, and may actually

_____

[11] Hayes' opening brief on summary judgment includes a single exhibit consisting of an affidavit with a number of attached documents that are stamped with several sub-docket numbers (e.g., 36-2, 36-3, and so on.)  The Court refers to these documents by the sub-docket numbers and associated page numbers stamped at the top of each page, rather than by the documents' organic page numbers.

undermine, Hayes' assertion that the ODJFS calculation methodologies challenged in this case are necessarily error-free as of the January 21, 2004 SETS certification. For example, the report includes a detailed appendix listing, in rows of a long table, detailed sub-objectives of the SETS review. (See Doc. #36-3 at 6 *et seq.*) Each sub-objective–described in a phrase–is followed by columns headed "Date Evaluated," "Date Approved," and "Requirement[s]." The cells corresponding to many of the criteria have been populated with dates and the label (under "Requirements") "PRWORA Requirement." However, for many of the sub-objectives that would appear to relate most closely to the prospective relief sought in this case, the corresponding cells are blank.[12]

Hayes does not discuss the appendix, and it is somewhat unclear from the face of the appendix whether the blanks indicate that the listed criterion failed to satisfy the corresponding PWORA certification standard, or whether the criterion was not analyzed because it was simply not *relevant* to any particular standard.[13] Other portions of the attached report appear consistent

---

[12] See, e.g., sub-objectives E-3[b][5] ("Identify cases where amount has accrued since IV-D began enforcing support order") (doc. #36-5 at 1); F-2[k][3] ("Receive, identify and total repayments from recipients") (id. at 10); F-4[f] ("Calculate and maintain arrearage information") (doc. # 36-6 at 2); G-3[a] ("Ensure validity of data entered into the system and generate error and audit reports") (id. at 4); G-3[c][8] ("Summary of distribution of child support") (id. at 5). Most strikingly, there are blank entries for all but one sub-objective under major objective F-4, which provides that the "[a]ccounting process must be uniform statewide, accept and maintain all financial information, and perform Title IV-D calculations." (Doc. #36-6 at 1.)

[13] The introduction to the appendix reads:

This section contains tables with all the new objectives required for PRWORA certification. The tables contain the objectives, evaluation date, approval date, and source of requirement(s). Light shaded areas are FSA 88 only requirements. These have not been evaluated and are shown to give the context of the PRWORA requirements. White areas are PRWORA requirements. If an objective contains no PRWORA requirements, the entire objective is omitted.

PRWORA requirements that have been evaluated have a date in the DATE EVALUATED column. PWORA requirements that have been approved have a date

12

with the latter view.[14]  However, even under this more benign reading, the blank entries may

indicate that the review on which the January 21, 2004 Ohio SETS certification was predicated

did not cover all relevant aspects of the system for purposes of this case.

In short, Hayes has not shown why the January 2004 federal certification of the SETS

system, in and of itself, necessarily ensures that the specific types of calculation errors Plaintiffs

allege in this case have ceased, let alone that those errors cannot "reasonably be expected to

recur."

### 2.    O.A.C. Rule Change

Current ODJFS Director Riley's motion also does not establish that Plaintiffs'

prospective relief claims against the ODJFS Director are generally moot.  Riley claims that a

---

in the DATE APPROVED column.

(Doc. #36-3 at 6.)  While this language is amenable to several interpretations, it is far from
obvious–in light of the information currently presented to the Court–how best to read it.  The
interpretative problem is compounded by the fact that–apart from heading rows–no "shaded
areas" are visible on the .pdf copy of the document electronically filed with this Court.  The
phrase "FSA 88 only requirements" appears to reference the Family Support Act of 1988.  (See
doc. #36-2 at 3.)  The federal certification letter accompanying the report notes that SETS
obtained "conditional" FSA 88 certification on October 18, 2001, but that certain "deficiencies"
were identified at that time.  (Id.)  The letter goes on to grant "full certification FSA88
certification for the SETS system"–a puzzling conclusion in light of the fact that, according to
the appendix language above, FSA 88-only requirements were not re-evaluated in the review that
led to the January 21, 2004 certification.

[14] For instance, the executive summary includes a table listing, in rows, the major
"PWORA Federal Review Certification Objectives," with corresponding columns labeled
"Functionality Evaluated" and "Functionality Approved."  (Doc. 36-2 at 9-10.)  While Hayes
does not indicate which objectives relate to the present case, Hayes' references to the
"distribution" test module suggest that at the very least, Objective F-5, labeled "Distribution
(timeframe, and recomputed distribution)," is relevant.  (Id. at 10.)  The corresponding
"Functionality Approved" cell is marked "Yes," which–according to the explanatory text below
the table–means that "all Sub-Objectives of the PRWORA Objective have been approved."  (Id.)
With one exception not obviously pertinent to this case (F-1, "Billing by State Disbursement
Unit"), all other objectives are also marked "Yes" for "Functionality Approved."  (Id. at 9-10.)

13

regulatory amendment undertaken on an emergency basis on January 4, 2005 and later adopted

as a new permanent regulation on April 5, 2005 moots this Court's September 28, 2004 order

enjoining ODJFS' Director (then Hayes) from "recouping erroneous overpayments from

Plaintiffs' subsequent child support payments without Plaintiffs' explicit consent or, barring that,

without a court procedure awarding the overpayment to Defendants." (Docs.#63 at 2-3; doc. #46

at 11; Part III.A, supra.)[15]  Because Riley does not claim that the cited rule change moots any

*other* prospective relief potentially available to Plaintiffs, see doc. #65 at 1, her motion

implicates only Plaintiffs' power to enjoin ODJFS' Director from over-withholding child support

as described in the September 28, 2004 order.[16]

Riley does not explain precisely *how* ODJFS' amendment of former O.A.C. § 5101:1-31-

12,[17] and subsequent promulgation of O.A.C. § 5101:12-80-05.6, has mooted Plaintiffs' power to

_____

[15] The Court's September 28, 2004 injunction was also directed towards another defendant, HCDJFS Director Suzanne Burke.  (Doc. #46 at 11.)  As of this writing, Burke has not challenged the injunction on mootness grounds.

[16] Riley does assert on reply that Plaintiffs' other prospective relief claims, which Riley broadly describes as relating to "the calculation of arrearages,"are also moot.  (Id.).  For support, however, she relies not on the regulatory amendments discussed in this section, but rather on the SETS certification facts set forth in Hayes' prior motion.  (Id.)  The Court has already found that Hayes' motion does not establish mootness with respect to any of Plaintiffs' prospective relief claims against ODJFS' Director.  See Part III.C.1, supra.

[17] As noted at Part III.A, supra, the amended regulation was originally codified at O.A.C. § 5101:1-31-12.  On April 4, 2005, the language added on January 4, 2005 was recodified at O.A.C. § 5101:12-80-05.6.  *Cf*. doc. #63-2 at 18-19 (strikethrough additions to original § 5101:1-31-12) and O.A.C. § 5101:12-80-05.6.  It appears that the remaining portions of original O.A.C. § 5101:1-31-12 were then recodified at the sections listed above.  See annotations to former O.A.C. § 5101:1-31-12 (repealed).  With her January 10, 2005 brief, Riley submitted a copy of O.A.C. § 5101:1-31-12 with strikethrough edits that purport to show the rule text as it existed both before and after the January 4, 2005 edit.  (See generally doc.# 63-2.)  However, there are some numbering discrepancies and content changes between that attachment and the recodified rule text in the above-listed sections–suggesting that § 5101:1-31-12 was re-amended after its January 4, 2005 emergency amendment and before its April 3, 2005 recodification.  *Cf.*, e.g., doc. #63-2 at 6 ("Billing cycle" with four subsections, (a)(i)-(a)(ii)) and current O.A.C. §

enjoin over-withholding.  Riley's brief sets forth the precise textual changes involved in the amendments,[18] but does not explain why these specific changes were chosen or how they were expected to alter the status quo challenged by Plaintiffs.  This omission is especially unfortunate given that the underlying regulations are long and highly technical.  See generally O.A.C. § 5101:12-80-05.6 (new rule promulgated April 4, 2005), and §§ 5101:12-80-05 through 5101:12-80-05.5 and 5101:12:80-07 (remainder of original rule as recodified April 3, 2005).  While it is certainly possible that the changes *do* operate to prevent the ODJFS Director from withholding "erroneous overpayments" of child support from Plaintiffs, the Court cannot so conclude from its own, bare review of the regulatory text.

The new rule ODJFS added to its existing regulation on January 4, 2005, and then adopted as a new regulation on April 4, 2005 generally provides that "[t]he receipt of funds in error by an individual will result in the establishment and enforcement of one or more recoupment accounts to secure the return and/or delivery of the funds to the proper parties."  See O.A.C. § 5101:12-80-05.6(A).  The rule also outlines what appear to be a series of derivative rules and procedures.  O.A.C. §§ 5101:12-80-05.6(A)(1)-(F).  The Court reads this language to outline a new corrective procedure for ODJFS to apply in cases where it discovers that the State has over-withheld child support from a former public assistance recipient.

It is not obvious to the Court that this language ends the inquiry; among other things,

---

5101:12-80-05 ("Billing cycle" with five subsections, (B)(1)-(B)(5), and new text at subsection (B)(3)). In any event, absent evidence that ODJFS' Director intends to re-enact an earlier regulation in some specific form challenged by Plaintiffs, the Court must consider the relevant regulations in their current form.  See Kentucky Right to Life, 108 F.3d at 644; Hooper v. Morkle. No. 02:01-cv-489, 2003 U.S. Dist. LEXIS 19670, at **14-15 (S.D. Ohio Oct. 30, 2003) (internal citations omitted).

[18] As discussed at note 17, supra, it appears that there have been some additional edits to the January 4, 2005 amended rule since Riley filed her brief.

Riley does not indicate whether this new procedure is currently available to Plaintiffs.[19]

Nevertheless, Plaintiffs, on response to Riley, appear to concede that the new rule does in fact

establish that ODJFS is no longer over-withholding child support in violation of the Family First

provisions–at least in their individual cases[20]–and thus brings ODJFS' Director into compliance

with the Court's September 28, 2004 injunction. (See doc. #64 at 3-4.) In light of Plaintiffs'

apparent concession, and their general failure to set forth any affirmative facts disputing Riley's

showing on this point, the Court finds that–for purposes of the specific relief described in the

September 28, 2004 injunction–the ODJFS Director is not engaged in any "ongoing violations."

      Plaintiffs suggest that the Court must maintain the September 28, 2004 injunction against

ODJFS' Director, even if the Director's ongoing violations have ceased, because Riley has not

shown that there is no "cognizable danger of recurrent violation[s] . . . ." (Id. at 3 (citing W.T.

Grant, 345 U.S. at 633)). The Court disagrees. As previously noted, a defendant's simple

cessation of "ongoing violations" with respect to a particular claim does not generally suffice to

moot that claim unless the defendant can also show that the "allegedly wrongful behavior could

not reasonably be expected to recur." Laidlaw, 528 U.S. at 190 (internal citation omitted); see

also introduction to Part III.C, supra. However, the Sixth Circuit has emphasized that where the

cessation stems from a government defendant's repeal or amendment of a specific rule or

---

    [19] Riley also does not explain how ODJFS' new regulation helps ODJFS' Director to prospectively identify, let alone eliminate, the sorts of over-withholding errors Plaintiffs allege. Riley effectively concedes this issue in her reply by asserting that it is the January 21, 2004 federal SETS certification, rather than the rule change, that moots Plaintiffs' request for an audit of the current system. (Doc. #65 at 1; see also doc. #74.)

    [20] Plaintiffs suggest that Riley has not shown that ODJFS' rule change brings the ODJFS Director into compliance with respect to other, unnamed individuals who may have also had their child support over-withheld. (See doc. #64 at 3-4.) Because no plaintiff class has been certified in this case, this argument is beyond the scope of the current motions.

regulation, the underlying claim is typically regarded as moot.  See Kentucky Right to Life, 108 F.3d at 644.  This rule does not apply in cases where there is evidence that a "recalcitrant" government defendant "clearly intends to reenact the challenged regulation."  (Id. at 645 (discussing City of Mesquite v. Aladdin's Castle, 455 U.S. 283 (1983)).  Riley's evidence–uncontested by Plaintiffs–reveals that ODJFS' Director attempted to comply with this Court's September 28, 2004 injunction by promptly drafting and issuing the new rules discussed above.  See Part III.B.2.  Plaintiffs have not put forth any counter-evidence suggesting that ODJFS' Director has been unresponsive to the injunction,[21] nor is the Court aware of any.

The Court thus finds that ODJFS' rule changes moot this Court's September 28, 2004 injunction against ODJFS' Director, and **GRANTS** Riley's summary judgment motion on this limited basis.  However, the Court expressly declines to extend this holding to Plaintiffs' other prospective claims, in light of an important–if thus far unremarked–distinction between this case and the legislative repeal cases cited above.  Plaintiffs' lawsuit, unlike those of the petitioners in Kentucky Right to Life and City of Mesquite, is not predicated on any specific regulatory language promulgated by ODJFS' Director or other the Defendants.[22]  Cf. Kentucky Right to Life, 108 F.3d at 639, and City of Mesquite, 455 U.S. at 287-88.  Rather, the gravaman of

---

[21] Plaintiffs suggest the injunction must nevertheless be kept in place because "[d]efendants have acted unconstitutionally and in violation of federal law for years."  (Doc. #64 at 3.)  Even assuming arguendo that this is true, it is a bit beside the point.  While the relative severity of a defendant's past conduct may sometimes bear on the question of whether violations are likely to recur in the future, generalized allegations that a defendant has broken the law in the past cannot defeat an otherwise supported claim of mootness.  If that were the case, the mootness doctrine could no longer serve its constitutional purpose of ensuring that federal courts consider only live cases or controversies, as opposed to any cases or controversies.

[22] This Court's 2003 order in an unrelated mootness case, cited by Riley, is distinguishable on the same grounds.  See Hooper v. Morkle. 02:01-cv-489, 2003 U.S. Dist. LEXIS 19670 at **2 and 11-12 (S.D. Ohio Oct. 30, 2003); see also doc. #65 at 1-2.

Plaintiffs' complaint is that Defendants' erroneous calculation and redistribution of child support arrearages violated the federal Family First provisions and Plaintiffs' procedural due process rights. While these distribution and calculation errors presumably *relate* to various rules promulgated by ODJFS, it is far from obvious–based on Riley's current pleadings–that any given rule change would eliminate such errors and ensure that those errors are reasonably unlikely to recur. In the broader posture of this case, the mere fact that ODJFS has issued the new rule discussed above does not satisfy the ODJFS Director's "heavy burden," <u>Laidlaw</u>, 528 U.S. at 190, of establishing that Plaintiffs' remaining claims for prospective relief are also moot.

In sum, with respect to the specific prospective relief described in this Court's September 28, 2004 order, Plaintiffs' claims against the ODJFS Director are moot. With respect to all other prospective relief potentially available to Plaintiffs–including but not necessarily limited to the relief ordered on October 14, 2005–Riley and Hayes have not made a threshold showing that the Director is no longer engaged in any "ongoing violations" for purposes of this case, let alone that the alleged violations are reasonably unlikely to recur. Therefore, to the extent Plaintiffs state other claims for prospective relief, those residual claims are not moot.[23]

## IV. CONCLUSION

For the reasons above, the Motion for Summary Judgment of past ODJFS Director Tom Hayes (doc. #36) is **DENIED**, the Motion for Summary Judgment of current ODJFS Director Barbara Riley (doc. #63) is **GRANTED**, and the Court's September 28, 2004 preliminary

---

[23] In so holding, the Court does not foreclose a future finding that the SETS certification and regulatory changes described by Riley and Hayes *do* in fact operate–either alone or in connection with other facts not yet established before this Court–to moot some or all Plaintiffs' remaining claims to prospective relief. The Court concludes simply that the current pleadings do not satisfy the ODJFS Director's "heavy burden" of establishing legal mootness on these remaining claims.

18

injunction against ODJFS' Director (doc. #46) is **DISSOLVED**.[24]

IT IS SO ORDERED.

                                 ___s/Susan J. Dlott__
                                 Susan J. Dlott
                                 United States District Judge

---

[24] The injunction remains in place against HCDJFS' Director.

19