IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Robin Gamble *et al.* | : | Case No. 1-03-cv-452 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING DEFENDANTS' |
| Ohio Department of Job and Family | : | MOTIONS FOR JUDGMENT ON |
| Services *et al.* | : | THE PLEADINGS |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on the Motion for Judgment on the Pleadings of Barbara Riley, director of the Ohio Department of Job and Family Services ("ODJFS") (doc. 91), the Motion for Judgment on the Pleadings of Rick Roberts, director of the Hamilton County Department of Job & Family Services ("HCDJFS") (doc. 93), Plaintiffs' Memorandum in Opposition to Both Motions for Judgment on the Pleadings (doc. 96), and the Joint Reply Memorandum in Support of the Motion for Judgment on the Pleadings (doc. 100).  For the following reasons, the Defendants' Motions are **GRANTED**.

**I. BACKGROUND**[1]

Plaintiffs, five Ohio parents who received public assistance at some point in time, brought this 42 U.S.C. § 1983 action against the ODJFS, the HCDJFS, and the agencies' respective directors.  Plaintiffs allege that the Defendants violated their federal statutory and procedural due process rights by wrongly over-withholding child support collections Plaintiffs had temporarily

---

[1] The background presented here is abbreviated.  A comprehensive factual and procedural history is included in the Court's Order Granting in Part and Denying in Part the Motion for Summary Judgment of Hamilton County Department of Jobs and Family Services and Suzanne Burke (doc. 81).

assigned to the State of Ohio as a condition of receiving public assistance. Specifically, Plaintiffs challenge Defendants' application of certain provisions of Title IV-D of the Social Security Act, 42 U.S.C. §§ 651 *et seq.*, known as the Family First provisions, that govern the distribution of these collections.

Under the Family First provisions, any child support collected while the recipient's family is on public assistance is transmitted to the State of Ohio and then either passed on to the federal government or retained by the State as reimbursement. *See* 42 U.S.C. § 657(a)(1)(A) and (B). Under the provisions, the total amount of child support ultimately paid to the federal government and/or retained by the State must not exceed the total amount of public assistance paid to the family by the State. *Id.* Plaintiffs allege that the Defendants have failed to calculate child support arrears properly and, as a result, have retained child support payments to which they are not entitled under the guise of recouping public assistance benefits.

In June 2004, the Court dismissed all Plaintiffs' claims against the ODJFS as barred by the Eleventh Amendment or state sovereign immunity doctrine. (Doc. 34.) However, the Court found that Plaintiffs could seek prospective declaratory and injunctive relief against the ODJFS director in his/her official capacity pursuant to the exception established in *Ex Parte Young*, 209 U.S. 123 (1908). In January 2006, the Court granted summary judgment to the HCDJFS on all Plaintiffs' claims against it and to the director of the HCDJFS as to Plaintiffs' claims for retrospective monetary relief, again on grounds of immunity. (Doc. 81.) It also granted summary judgment to the director of the ODJFS as to Plaintiffs' claim for prospective relief on the issue of "recouping erroneous overpayments from Plaintiffs' subsequent child support payments without Plaintiffs' explicit consent or, barring that, without a court procedure awarding the overpayments

2

to Defendants" as moot, based on an Ohio Administrative Rule change put into effect as a result of the Court's September 28, 2004 order enjoining ODJFS' director from recouping overpayments without consent or a court order.  (Doc. 80.)  However, the Court denied the motion for summary judgment as to Plaintiffs' other claims for prospective relief.  (*Id.*)

The directors of the ODJFS and the HCDJFS now move for judgment on the pleadings on two grounds: (1) the recent Sixth Circuit decision in *Hughlett v. Romer-Sensky*, 2006 U.S. App. LEXIS 16823 (6th Cir. 2006), which held that individuals do not have a private right of action under 42 U.S.C. § 657(a), and (2) Ohio's new administrative rules that require a Child Support Enforcement Agency ("CSEA") to get a court order or agreement before deducting money from child support payments.  Plaintiffs respond that their 42 U.S.C. § 1983 claim remains viable despite the holding of *Hughlett* because the property rights they claim are created by Ohio Rev. Code § 3123.19, not solely 42 U.S.C. § 657(a).  Further, Plaintiffs assert that the administrative rule change does not rectify the alleged deprivation of property without due process of law because the hearing made available under the rule is ineffective in the absence of an audit procedure that accurately states the amount of child support owed.

## II. ANALYSIS

### A. Legal Standard

The Court reviews Defendants' motions for judgment on the pleadings, made under Rule 12(c), in the same manner as it would review a motion made under Rule 12(b)(6). *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006).  To withstand such a motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp.*

*v. Twombly*, 127 S. Ct. 1955 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

### B. Claims Under 42 U.S.C. § 1983

Section 1983 creates a private right of action against anyone who, under color of state law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); 42 U.S.C. § 1983. Section 1983 does not itself create any rights but merely provides a mechanism for enforcing individual rights "secured" elsewhere. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). While § 1983 actions may be used to remedy violations of both constitutional and statutory law, they are available only where the alleged violations implicate specific federal rights recognized as privately enforceable under that section. *Id.* at 279-80 (citing in part *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)).

Plaintiffs do not expressly assert a cause of action under § 1983. Rather, they claim a violation of procedural due process and allege that they "have a property right, created by federal and state statutory provisions and regulations, including but not limited to 42 U.S.C. § 657(a), to child support arrearages. . . ." (Doc. 1 ¶ 36.) Of course, § 1983 is the mechanism for enforcing due process rights secured by the Constitution. However, Defendants (and to an extent, the Court) have construed Plaintiffs' cause of action as though it asserted not only due process claims (with § 657(a) creating the underlying property right), but also a § 1983 action for enforcement of § 657(a). (*See*, *e.g.*, Motion for Summary Judgment of HCDJFS and Burke, doc. 25 at 15-20;

Order Granting in Part Motion for Summary Judgment, doc. 81 at 26-35.)  Without discussing the propriety of such construction, the Court will analyze both the statutory and due process claims under § 1983.

      **1.**      **42 U.S.C. § 657(a)(3)**

The Court has already once considered in this case whether Plaintiffs alleged a violation of federal rights enforceable under § 1983.  At that time, in ruling on the Defendants' Motions for Summary Judgment, the Court concluded that an alleged violation of the Family First provisions codified at 42 U.S.C. § 657(a) gave rise to federal rights enforceable under 42 U.S.C. § 1983. (Doc. 81 at 26 (applying the test set forth in *Blessing*, 520 U.S. at 340-41, as refined in *Gonzaga Univ.*, 536 U.S. at 284.))[2]  The Court acknowledged at the time that the Eighth Circuit had concluded that § 657(a) was "too vague and amorphous" for judicial enforcement, citing *Walters v. Weiss*, 392 F.3d 306, 313 (8th Cir. 2004).  (*Id*. at 33 n. 36.)  However, as *Walters* did not set forth an analysis for the holding, the Court did not find it persuasive.

After the Court rendered its decision on the issue, however, the Sixth Circuit came to a contrary conclusion, holding in *Hughlett v. Romer-Senksy*, 2006 U.S. App. LEXIS 16823 (6th Cir. 2006) that 42 U.S.C. § 657(a)(3) does not create a privately enforceable right.  Applying the analyses set forth in *Blessing* and *Gonzaga*, the Sixth Circuit concluded that:

---

[2] Pursuant to *Blessing*, a court must look at three factors when determining whether a statutory provision gives rise to federal rights enforceable under 42 U.S.C. § 1983: (1) Congress must have intended that the provision in question benefit the plaintiff, (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence, and (3) the statute must unambiguously impose a binding obligation on the States.  520 U.S. at 340-41 (citations omitted).  In *Gonzaga*, the Supreme Court emphasized that the relevant statutory "text must be phrased in terms of the persons benefitted."  536 U.S. at 284.

5

> The statute does not contain the individually focused, rights-creating language necessary to confer an individual right. *Section 657(a)* identifies a family as the ultimate beneficiary of the collected monies: "Subject to subsections (d) and (e) of this section, an amount collected *on behalf of a family* as support by a State pursuant to a plan approved under this part shall be distributed as follows . . . ." *Id.* However, the provision is *directed* toward the administering body and describes the methods that must be in place for the collection and distribution of support payments. The district court properly found that the statute is intended to provide instruction to the States and does not contain the rights-creating language necessary to create an enforceable right.

*Id.* at *12.[3] In light of *Hughlett*, Plaintiffs cannot pursue a § 1983 claim against the Defendants for violation of § 657(a) because that statute does not create a privately enforceable right.

However, as Plaintiffs correctly note, "*Hughlett* does not address the state-created property right in support payments. Thus, the dismissal of the *Hughlett* plaintiffs['] claim for enforcement of 42 U.S.C. § 657(a) in an action under 42 U.S.C. § 1983 does not foreclose the custodial parents in this case from asserting [a] procedural due process right to protect the dollars of support which come into possession of the State." (Doc. 111 at 4.) Indeed, whether Plaintiffs still have a due process claim requires a separate analysis.

### 2. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*,

---

[3] The *Hughlett* opinion is in line with decisions out of the Eighth and Eleventh Circuits, which have held that § 657 does not create an individually enforceable federal right. *See Walters v. Weiss*, 392 F.3d 306, 313 (8th Cir. 2004) and *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006).

435 U.S. 247, 259 (1978). The determination of whether a due process violation has occurred involves a two-prong analysis. First, the Court must decide whether Plaintiffs have a property right that entitles them to procedural protections. *Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Then, the Court must determine what process is due. *Id*. at 541. For the purposes of claims brought under § 1983, "the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983)).

Plaintiffs asserted in their Complaint that they had a property right pursuant to 42 U.S.C. § 657(a) that provided grounds for their due process claim. When considering the Defendant's Motion for Summary Judgment, the Court noted that it was "unclear whether Plaintiffs state any claim to constitutional relief under § 1983 that is *independent* of their claim to relief under 42 U.S.C. § 657(a)," and the Court declined to decide that issue because the parties had not adequately briefed it. (Doc. 81 at 34 n. 37.) The parties have since agreed that Ohio Rev. Code § 3123.19 provides Plaintiffs with a property right sufficient to satisfy the first prong of the due process analysis. (Doc. 100 at 2 n. 1.)[4] Thus, what remains for the Court to determine is whether there is adequate process available with respect to that right.

Both parties rely on *Mathews v. Eldridge*, 424 U.S. 319 (1976), as setting forth the applicable standard for deciding the due process claim herein asserted.[5] Under the *Mathews*

---

[4] Ohio Rev. Code § 3123.19 provides that "[i]f child support arrearages are owed by an obligor to the obligee and to the department of job and family services, any payments received on the arrearages by the office of child support shall be paid in accordance with Title IV-D of the "Social Security Act," 88 Stat. 2351, 42 U.S.C. 651 et seq., as amended, and rules adopted by the director of job and family services."

[5] The Court is mindful that the U.S. Supreme Court has "never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenberry v. United States*,

7

balancing test, the Court must consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

A rudimentary issue in this case is deciphering the "official action" being challenged by Plaintiffs. Plaintiffs' complaint is, at bottom, that "the State is simply incapable of accurately stating the amount of child support it owes Plaintiffs." (Doc. 96 at 3.) However, a due process claim is not the proper vehicle for asserting that a state has rendered an incorrect result concerning the calculation of benefits. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation omitted). Stated otherwise, "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery*, 534 U.S. at 167 (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993)). Plaintiffs

---

534 U.S. 161, 168 (2002). The Supreme Court has invoked *Mathews* to decide due process challenges to "the adequacy of administrative procedures," but it has "regularly turned to [*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)] when confronted with questions regarding the adequacy of the method used to give notice." *Id*.; *see also Grayden v. Rhodes*, 345 F.3d 1225, 1242 (11th Cir. 2003) (applying *Mullane* to determine what type of notice is constitutionally adequate). Although Plaintiffs recently asserted that the relief they seek is "post deprivation notice of the distribution of actual child support payments" (doc. 111 at 5), Plaintiffs did not allege constitutionally deficient notice in their Complaint, and they have not in the four years this case has been pending moved for leave to file an amended complaint to add any such claim. Thus, the Court will construe Plaintiffs' due process claim as one concerning the adequacy of administrative procedures and will apply the *Mathews* standard.

do not actually allege any inadequacy with respect to the Defendants' current procedures for "notice and an opportunity to be heard" and have not addressed Defendants' argument that Ohio Admin. Code § 5101:12-80-05.6(F) establishes a pre-deprivation procedure with respect to the State's recoupment of erroneously overpaid benefits.[6]

Neither do the Plaintiffs meaningfully address Defendants' argument that even if the pre-deprivation process was not sufficient, custodial parents have post-deprivation means for obtaining improperly withheld money, namely, an administrative hearing pursuant to Ohio Admin. Code § 5101:6-3-01(B)(4) or an appeal to the courts.[7] Plaintiffs' response to the fact that they have an opportunity for a hearing if they believe child support has been incorrectly distributed is: "while the State can give Plaintiffs ten hearings to show what they are owed, the only way Plaintiffs can actually show it is if the State gives them an accurate audit." (Doc. 96 at 5.) This last statement conclusively demonstrates that it is the accuracy of the audit that forms the root of Plaintiffs' claim, not the notice provided by the State or their opportunity to be heard.

While the Court is duly sympathetic to Plaintiffs' concerns about the accuracy of the State-generated audits, such a claim is not a procedural due process argument. *See*, *e.g.*, *Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 621 (6th Cir. 2005). In *Caswell*, the Sixth Circuit considered a plaintiff's claim that he was denied adequate due process when the City of Detroit Housing Commission terminated his benefits after an administrative hearing on the issue. *Id*. at

---

[6] Ohio Admin. Code § 5101:12-80-05.6(F) requires a CSEA to (1) get permission of the custodial parent prior to the withholding of child support, or (2) obtain a court order to do so.

[7] A custodial parent can request a state hearing if "the custodial parent believes that child support collections have not been distributed or disbursed correctly[.]" Ohio Admin. Code § 5101:6-3-01(B)(4). The review procedure includes "the right to an administrative appeal, as well as judicial review of the administrative decision." *Hughlett v. Romer-Sensky*, 2006 U.S. App. LEXIS 16823 at *18 (citing Ohio Admin. Code § 5101:6-8 and 5101:6-9).

617. The court concluded that

> Caswell's . . . claim is not a procedural due process argument. Caswell is not claiming that he was denied adequate process. To be sure, he is unable to point to what additional procedural safeguards should have been provided to better protect his property interest. . . . Caswell was permitted to conduct discovery, present evidence, cross-examine witnesses, and be represented by counsel, at his own expense. . . . Instead of pointing to a procedural flaw in his hearing, Caswell claims that he was improperly denied his property interest, despite the fact that he received process. This claim is inconsistent with a procedural due process claim. The "Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error."

*Id.* at 621 (internal citations omitted). As in *Caswell*, Plaintiffs here have not pointed to any "additional procedural safeguards" that should be provided to custodial parents but rather claim that they may be improperly denied their property interest despite the process in place. Under the current procedures, custodial parents are entitled to conduct discovery and introduce evidence during administrative and state court proceedings that might demonstrate that money has been over-withheld by the State. In fact, Plaintiffs state that they completed "hand audits" of their own accounts, thus demonstrating that there are no barriers to developing such facts. (*See* doc. 41 Ex. 2 (affidavit of Plaintiffs' child support advocate stating that she completed audits using documents from county CSEAs).) Accordingly, Plaintiffs have not asserted a procedural due process claim, and the Court need not engage in the *Mathews* analysis.[8]

---

[8] Even if Plaintiffs had challenged adequacy of the procedures available to custodial parents who feel that their child support has been incorrectly withheld, they would have had a difficult time demonstrating that the post-deprivation remedy set forth in Ohio Admin. Code § 5101:6-3-01 is inadequate to address their claims, as the court in *Hughlett* examined that provision and concluded that the plaintiffs had failed to show that it was inadequate. *Hughlett*, 2006 U.S. App. LEXIS 16823 at *26.

The Court is compelled to add that in their most recent filing, a Memorandum in Opposition to the State Defendants' Motion to Stay Discovery and for a Protective Order (doc. 111), Plaintiffs for the first time engage in a discussion concerning the content of the notice provided to custodial parents with respect to collection and distribution of support. (Doc. 111 at 5-8.) They claim in the memorandum that the notice currently provided via the internet does not report either the basis of the State's claim to arrears or the amount attributable to each cause. (*Id*. at 7.) They assert that the remedy they now seek is "post deprivation notice of the distribution of actual child support payments as between the custodial parent and the defendants' claim to portions of the arrears as they are collected" and seek to analogize this case to *Barnes v. Healey*, 980 F.2d 572 (9th Cir. 1992), in which the court held that notice being sent to custodial parents concerning child support collections and distributions was insufficient to satisfy procedural due process. They also state an intention to move for leave to amend their complaint, presumably to add a due process violation claim arising from the allegedly deficient notice. (*Id*. at 7 n. 5.)

Plaintiffs' eleventh-hour attempt to recast their claim and their footnoted suggestion that they will seek leave to amend are insufficient to save the Complaint from dismissal. This lawsuit has been pending for more than four years, and the Court has rendered decisions on a motion to dismiss (doc. 34) as well as two motions for summary judgment (docs. 80, 81). At no time, even after the enactment of Ohio Admin. Code § 5101:12-80-05.6(F) in April 2005,[9] did Plaintiffs move to amend their Complaint to challenge the adequacy *of the notice* Defendants provide concerning the amount of support collected and distributed. Thus, this case is not analogous to *Barnes* as Plaintiffs suggest, because in *Barnes*, the plaintiffs' lawsuit challenged the sufficiency

---

[9] (providing a pre-deprivation remedy)

11

of the notice provided by the state pertaining to support collected and distributed. Though not cited by the Plaintiffs, *Arrington v. Helms*, 438 F.3d 1336 (11th Cir. 2006) is similar to *Barnes* and demonstrates the type of allegations made by plaintiffs who challenge the sufficiency of notice by a child support enforcement agency. In *Arrington,* the plaintiffs alleged that the state defendants' failure to provide them with "accurate, timely, frequent and meaningful notice of [child] support collected and distributed" violated their rights to procedural due process. *Id.* at n. 6. They argued that the defendants were required to provide them with notices and explanations that would allow a parent to understand the distribution of each child support collection and to identify possible errors in distribution and delays in disbursement. *Id.* Plaintiffs' Complaint in this case makes no such allegations, thus this case is distinguishable from *Barnes* and *Arrington*.[10]

In sum, because Plaintiffs failed to sufficiently allege that the Defendants deprived them of a right conferred upon them by the Constitution or statute, their claims under 42 U.S.C. § 1983 must fail.

C.      **Equitable Remedy**

In addition to their cause of action for violation of due process, Plaintiffs also asserted a cause of action for "equitable relief." Noting that the Court has previously held that Plaintiffs were entitled, at most, to prospective injunctive relief against the directors of the ODJFS and the

---

[10] The standard for determining what type of notice is adequate to satisfy the Due Process Clause is whether the notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Arrington*, 438 F.3d at 1349-50 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)); *see also Grayden v. Rhodes*, 345 F.3d 1225, 1242 (11th Cir. 2003) (applying *Mullane* to determine what type of notice is constitutionally adequate). Therefore, if Plaintiffs had alleged a due process claim concerning the sufficiency of notice, they would have had to demonstrate that the notice provided by the Defendants–which plaintiffs admit satisfies the relevant federal regulation (45 C.F.R. § 302.54)–is not reasonable under the circumstances.

HCDJFS (doc. 34 at 7; doc. 81 at 23 (citing *Ex Parte Young*, 209 U.S. 123 (1908))), Defendants argue that the Eleventh Amendment bars Plaintiffs' remaining claim for freestanding equitable relief.  (Doc. 100 at 8.)  Specifically, Defendants point out that the *Young* exception to Eleventh Amendment immunity applies only when the relief "serves directly to bring an end to a present violation of federal law" and that Plaintiffs' claim of equity does not constitute a violation of federal law.  (*Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 277 (1986).)

Plaintiffs rely on *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 355 F.3d 574 (6th Cir. 2004) as authority for their position that the Court is entitled to exercise its broad equitable powers in this case.  (Doc. 96 at 6.)  However, *Kalamazoo River* is not analogous to this case: it is a CERLCA cost-recovery action that does not involve government entities or Eleventh Amendment defenses.  Thus, it does not provide the Court with grounds for forging equitable relief under the circumstances presented here.  In the absence of any precedent demonstrating that freestanding equitable relief is a viable legal theory entitling Plaintiffs to recovery in the face of Eleventh Amendment immunity and the Court's earlier finding that Plaintiffs are entitled only to prospective injunctive relief, the Court must grant judgment in the Defendants' favor.

### III.  CONCLUSION

For the foregoing reasons, Defendants' motions for judgment on the pleadings (docs. 91 and 93) are GRANTED.

IT IS SO ORDERED.

   s/Susan J. Dlott   
Susan J. Dlott
United States District Judge